RICHARD R. MIROW and LAURA G. MIROW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mirow v. Commissioner
Docket No. 6643-73.
United States Tax Court
T.C. Memo 1975-136; 1975 Tax Ct. Memo LEXIS 235; 34 T.C.M. (CCH) 628; T.C.M. (RIA) 750136; May 8, 1975, Filed Martin Fred Greenberg and Lance E. Eisenberg, for the petitioners. Curtis O. Liles, III, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: Respondent determined deficiencies in the joint Federal income tax of the petitioners, as follows: Year Ended
Deficiency
December 31, 1964
$ 519.06
December 31, 1965
129.76
December 31, 1967
2,631.46
December 31, 1968
25,460.48
December 31, 1969
9,741.23
This proceeding was submitted under Rule 122, Tax Court Rules *236 of Practice and Procedure. Due to concessions by the petitioners, the only issue remaining for our determination is the amount of corporate net operating losses deductible by petitioners under section 1374. [1]
All of the facts have been stipulated. The stipulated facts and the exhibits attached thereto are incorporated herein by this reference. The facts relevant to our decision are set forth below. Petitioners Richard R. and Laura G. Mirow are husband and wife. They filed joint Federal income tax returns on the cash method of accounting for the taxable years 1964, 1965, and 1967 through 1970 with either the district director of internal revenue, Jacksonville, Florida, or the Southeast Service Center, Chamblee, Georgia. At the time of the filing of the petition herein, the petitioners' place of residence was North Miami, Florida. Laura G. Mirow is a party to this action only by virtue of having filed joint income tax returns with her husband for the years in question. Further references to "petitioner" will therefore only refer to Richard R. Mirow. At all times *237 material herein, Herzog Construction, Inc., was a qualified, electing small business corporation under subchapter S. It had outstanding 100 shares of capital stock, of which the petitioner owned 60 shares and the petitioner's brother, Jack Mirow, owned 40 shares. In 1967, Herzog Construction, Inc., contracted to construct an eight story apartment building in Hallandale, Florida, to be known as the Lake Shore Apartments. In connection therewith, Herzog Construction, Inc., was required to furnish a "performance bond" and a "labor and material payment bond" each in the amount of $850,000. The Fidelity and Deposit Company of Maryland (hereinafter sometimes referred to as "Fidelity") supplied the bonds. The petitioners, Jack Mirow and Joseph Herzog (who was president of Herzog Construction, Inc.) as indemnitors, and Herzog Construction, Inc., as the contractor, were required to enter into an Agreement of Indemnity with Fidelity whereby they became jointly and severally liable to repay to Fidelity all losses incurred by it plus expenses in connection with Fidelity's performance under its bonds. The agreement further provided that any additional agreements entered into between Fidelity *238 and any of the indemnitors or the contractor creating additional rights or collateral for Fidelity would be in addition to, and not in lieu of, the rights afforded Fidelity under the Agreement of Indemnity. As of the summer of 1968, Herzog Construction, Inc., began to encounter financial difficulties. The petitioners agreed to collateralize their obligations pursuant to the Agreement of Indemnity by executing and placing in escrow promissory notes in the aggregate principal amount of $100,000 secured by mortgages on premises located in North Miami Beach, Florida, and upon the personal residence of the petitioner. In addition, the petitioner, joined by Jacob Mirow, pledged all of his shares of the stock of Naranja, Inc., to Fidelity to secure payment of an obligation in the amount of $40,000 to Fidelity plus certain other costs. From September 10, 1968, until completion of the Lake Shore Apartment project, Fidelity was called upon to make payments pursuant to its bonds in excess of $200,000. In November 1969, the petitioner and Fidelity entered into an oral agreement whereby in consideration of Fidelity's forebearance, the petitioner agreed to pay $2,000 per month to Fidelity to *239 be applied to the indebtedness of Herzog Construction, Inc. Such payments were to be increased to $3,000 per month commencing on November 15, 1970, for the succeeding year and thereafter to be adjusted upward annually depending upon the overall circumstances of all of the indemnitors. Thereafter, the petitioner made payments to Fidelity for application to the account of Herzog Construction, Inc., until sometime in 1970 when the oral agreement was reduced to writing in a Memorandum Agreement of Forbearance. Under the terms of that agreement, the petitioner was to pay Fidelity the sum of $2,500 per month for the 6-month period beginning October 15, 1970, and then to make payments of $3,000 per month thereafter on the indebtedness of all of the indemnitors until the indebtedness was fully satisfied. The agreement also provided That this Agreement of Forbearance shall not be construed to affect or modify any other relationship with any of the Indemnitors and the provisions of the Indemnity Agreement. As of December 31, 1970, there remained due on the Herzog Construction, Inc., account with Fidelity the amount of $93,007.83. Subsequent to December 31, 1970, the petitioner satisfied *240 the Herzog Construction, Inc., account by payments to Fidelity of $93,007.83. For the fiscal year ended November 30, 1970, Herzog Construction, Inc., suffered a net operating loss of $464,759.71 of which the sum of $278,855.83 was allocable to the stock owned by the petitioner. On the return for 1970, the petitioner claimed that his basis in the stock of Herzog Construction, Inc., was $265,946.59 and claimed that amount as his deductible share of the net operating loss of Herzog Construction, Inc., for 1970. [2] The respondent determined that as of December 31, 1970, the petitioner's adjusted basis in the stock of Herzog Construction, Inc., and deductible share of the net operating loss did not exceed $163,986.20 computed, as follows: Stock
$ 5,000.00
Paid-In Capital
20,000.00
Loans to Herzog
109,986.20
Payments to Fidelity
29,000.00
$163,986.20 Petitioner now contends that this amount should be increased by the $93,007.83 that remained due on the Herzog Construction, Inc., account with Fidelity. Petitioner argues that as an indemnitor this was an indebtedness of the corporation to him. *241 Section 1374(b) provides that a shareholder of an electing small business corporation may deduct from gross income, for the taxable year in which the taxable year of the corporation ends, a proportionate share of the corporation's net operating loss as determined under subsection (c). Section 1374(c)(2) provides, as follows: (2) Limitation.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of-- (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable *242 year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation). In the application of section 1374(c)(2), petitioner contends that there should be included in his adjusted basis the balance of $93,007.83 due Fidelity on account of the construction bonds. Petitioner argues that, as a practical matter, neither Herzog Construction, Inc., nor his co-indemnitors had the resources to pay this obligation. Therefore, Fidelity looked solely to the petitioner for payment. This made the petitioner, in fact, the primary obligor to Fidelity and gave rise to a corresponding indebtedness on the part of Herzog Construction, Inc., to the petitioner, thereby increasing the petitioner's basis in the stock. Even assuming, however, that as of December 31, 1970 it was highly unlikely that either Herzog Construction, Inc., or petitioner's co-indemnitors would discharge their obligations under the bonds and indemnity agreement, this did not per se make the petitioner a primary obligor. The indebtedness of Herzog Construction, Inc., to the petitioner could arise only when and if petitioner made payment on account of the bonds. Wheat v. United States,353 F. Supp. 720 (S.D. Tex. 1973); *243 William H. Perry,47 T.C. 159 (1966), affd. 392 F. 2d 458 (C.A. 8, 1968); Milton T. Raynor,50 T.C. 762 (1968). See also, Putnam v. Commissioner,352 U.S. 82 (1956). Simply guaranteeing the indebtedness of the corporation to the third party will not cause the corporation to be indebted to the shareholder. Joe E. Borg,50 T.C. 257 (1968). Whether the contract of the shareholder is one of guaranty or indemnity, the result is the same. M. Seth Horne,59 T.C. 319 (1972), on appeal (C.A. 9, May 11, 1973). Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The deficiencies for 1964, 1965, 1967, and 1968 arose from the respondent's reduction of the net operating loss of the petitioner for 1970. The 1969 deficiency resulted from two minor adjustments, as well as the reduction in the petitioner's net operating loss of 1970. The year 1970 is relative to this proceeding only because of the reduction of the petitioner's claimed net operating loss.↩