**Edward M. SELFE and Jane B. Selfe, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–7026.

United States Court of Appeals, Eleventh Circuit.

Dec. 23, 1985.

Edward M. Selfe, Birmingham, Ala., for plaintiffs-appellants.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Birmingham, Ala., Michael L. Paup, Atty., Tax Division, Dept. of Justice, Washington, D.C., Glenn L. Archer, Jr., Richard Farber, Teresa E. McLaughlin, Washington, D.C., for defendant-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and DUMBAULD *, District Judge.

KRAVITCH, Circuit Judge:

This appeal requires us to determine whether a shareholder in a Subchapter S corporation, who personally guarantees and secures a corporate debt, may increase the adjusted basis of her stock by the full amount of the debt in order to maximize her loss deductions under I.R.C. section 1374.[1]

The district court granted summary judgment in favor of the government and dismissed taxpayers' suit for refund of $24,287 in federal income taxes and inter-est paid. The district court also denied appellants' motion for summary judgment. We reverse and remand.

Taxpayer, Jane B. Selfe, formerly Jane Simon, entered into a retail clothing business in 1977 under the name of Jane Simon, Inc. She applied to the First National Bank of Birmingham for financing. In consideration of her pledge of 4500 shares of stock in Avondale Mills owned by her and close family members, the bank agreed to extend a line of credit to her in the amount of $120,000 for use in the business. Shortly thereafter, the business was incorporated. Taxpayer and her former husband were issued all of the stock, which was subsequently conveyed to Jane upon their divorce. The shareholders of the corporation elected to have the corporation taxed pursuant to Subchapter S of the Internal Revenue Code of 1954. At the request of the bank, all loans made to the taxpayer individually pursuant to the line of credit, except $10,000 initially advanced, were converted to corporate loans. Taxpayer executed an agreement guaranteeing the corporation's indebtedness to the bank.

---

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. For the tax year in issue I.R.C. § 1374 provided, in relevant part:

> SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS
>
> (a) General Rule.—A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.
>
> (b) Allowance of Deduction.—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)). The deduction allowed by this subsection shall, for purposes of this chapter, be considered as a deduction attributable to a trade or business carried on by the shareholder.
>
> (c) Determination of Shareholder's Portion.—
>
>    \*     \*     \*     \*     \*     \*
>
> (2) Limitation.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—
>
> (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect to stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and
>
> (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

The loan officer testified that the bank wanted the assurance of having the corporation primarily liable to repay the loan, but that the conversion did not abridge the stock pledged as collateral, or the bank's rights against the taxpayer as guarantor, in the event of the corporation's default. Subsequently, the corporation granted the bank a security interest in its receivables, inventory and contract rights in order to obtain a renewal of its loans. The business began operations on August 4, 1977 and suffered losses for each year through 1980. It never, however, defaulted on its loan payments and the bank never was required to proceed against either the Avondale Mills stock or the taxpayer. On June 30, 1980, the outstanding balance of the corporation's indebtedness to the bank exceeded $130,000.

The net operating loss of Jane Simon, Inc. for the fiscal year ending June 30, 1980 was $33,824. Taxpayer and her new husband, Edward Selfe, deducted the entire loss from gross income on their joint income tax return for the year 1980. The government, however, determined that the allowable portion of the loss was limited to $4,946, the amount it determined was the taxpayer's adjusted basis in the corporation, and accordingly disallowed $28,878 of the claimed deduction, giving rise to an income tax deficiency in the amount of $16,839.42 plus interest in the amount of $7,648.64. Taxpayer paid the claim and then filed a claim for refund of the tax and interest. The government disallowed the claim and the taxpayer instituted a refund suit in the district court. The district court judge denied the taxpayer's motion for summary judgment, but granted summary judgment to the government.

I.R.C. section 1374 permits a shareholder in a Subchapter S corporation to deduct his portion of the corporation's net operating loss from his personal income. Section 1374 limits the amount of the deduction, however, to the sum of the adjusted basis of the shareholder's stock in the corporation, plus the adjusted basis of any indebtedness of the corporation to the shareholder. Relying upon the principles of *Plantation Patterns, Inc. v. Commissioner*, 462 F.2d 712 (5th Cir.), *cert. denied*, 409 U.S. 1076, 93 S.Ct. 683, 34 L.Ed.2d 664 (1972),[2] the appellant argues that the bank is deemed to have made the loan directly to her and that she then contributed the loan proceeds to Jane Simon, Inc., thereby increasing her basis in the stock of the corporation. In *Plantation Patterns*, the Fifth Circuit held that a loan is deemed to be made to a stockholder who has guaranteed a corporate note when the facts indicate that the lender is looking primarily to the stockholder for repayment. *Plantation Patterns*, however, did not involve section 1372 as the corporation in that case was not a Subchapter S corporation. Rather, in *Plantation Patterns*, the former Fifth Circuit affirmed as not clearly erroneous, a Tax Court finding that a transaction structured as a loan by an independent third party to a corporation, and guaranteed by a shareholder, was in substance a loan to the shareholder followed by his contribution of the loan proceeds to the capital of the corporation, and that as a result, the corporation's payments of principal and interest on the debt constituted constructive dividends to the shareholder. The taxpayer here does not argue that the cases are identical; rather, she argues that the principles announced in *Plantation Patterns* should apply here and points to the testimony of her bank officer that the loan to Jane Simon, Inc. was secured by the taxpayer's Avondale stock and that the bank was primarily looking to the taxpayer and her pledged stock for repayment of the loan.[3]

---

**2.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** It is not clear from the bank officer's deposition testimony that the bank was primarily look-

ing to the taxpayer for repayment. Mr. Anthony, the bank officer, testified that the loans originally advanced to the taxpayer were converted to corporate loans because "it just made more sense to have the company primarily liable and then the individuals would be just as liable as they were when the loans were direct

Taxpayer's position is supported further by *Peter Blum,* 59 T.C. 436 (1972) and *In re Lane,* 742 F.2d 1311 (11th Cir.1984). In dicta, in the *Blum* case, the Tax Court stated it could see no distinction in principle between a situation such as Selfe's and *Plantation Patterns.* In *Lane* we observed that "we pay close heed to the dictates set forth by ... *Plantation Patterns,*" when determining whether a shareholder's capital infusion is a loan or equity investment. 742 F.2d at 1320 (citations omitted). The taxpayer also points to proposed regulations, section 1.385–9, under section 385 of the code, which apply the principles of *Plantation Patterns.*[4] These regulations, however, were withdrawn in 1983.

The district court, primarily relying upon *Brown v. Commissioner,* 706 F.2d 755 (6th Cir.1983), held that an economic outlay resulting in an increase in a shareholder's basis in a Subchapter S corporation occurs only when the shareholder-guarantor is called upon to pay the corporation's debt. Here, although the corporation each year had suffered losses, it did not default on the payments due the bank on the loan. Furthermore, the bank had renewed the loan to the corporation upon assignment of its accounts receivable. The government points out that taxpayer has cited no decision in which a court has held that a shareholder's guarantee of a loan made to a Subchapter S corporation increased his basis in the corporation and states that similar attempts to circumvent the limitations of section 1374(c)(2) repeatedly have been rejected by the courts.[5]

■ We find the Sixth Circuit's reasoning in *Brown* only partially persuasive. We agree with *Brown* inasmuch as that court reaffirms that economic outlay is required before a stockholder in a Subchapter S corporation may increase her basis.[6] We disagree, however, with the proposition that a stockholder/taxpayer must, in all cases, absolve a corporation's debt before she may recognize an increased basis as a guarantor of a loan to a corporation.[7] In-

to them." Mr. Anthony also testified, however, that the taxpayer's collateral and personal guaranty were "primarily" why the bank renewed the corporation's loans. On remand, the court will have to determine what the bank's intentions were.

**4.** Proposed regulation 1.385–9 provided in part:
    (a) **In general.** If—
    (1) A shareholder in a corporation guarantees a loan made to the corporation (either directly or indirectly, *e.g.,* by pledging collateral), and
    (2) Under relevant legal principles (applied without reference to the regulations under section 385), the loan is treated as made to the shareholder, then the shareholder is treated as making a contribution to the capital of the corporation.
    (b) **Illustrations.** The following examples illustrate the application of this section:
    **Example (1).** On September 25, 1982, J organizes corporation N and acquires all of its capital stock. In addition, J guarantees a note for $600,000 issued by N on September 28, 1982. Assume that under the principles of *Plantation Patterns, Inc. v. Commissioner,* 462 F.2d 712 (5th Cir.1972) ... and other relevant case law, the note is properly treated as an obligation of J. Based on these facts, J is treated as making a $600,000 contribution to the capital of N.

Although this proposed regulation was withdrawn, this court has never "withdrawn" the principles set forth in *Plantation Patterns.* Indeed we recently reaffirmed those principles in *In re Lane,* 742 F.2d at 1320.

**5.** *See, e.g., Brown, supra; Perry v. Commissioner,* 47 T.C. 159 (1966), aff'd on other grounds, 392 F.2d 458 (8th Cir.1968); *Wheat v. United States,* 353 F.Supp. 720 (S.D.Tex.1973); *Neal v. United States,* 313 F.Supp. 393 (C.D.Cal.1970); *Perry v. Commissioner,* 54 T.C. 1293 (1970), aff'd, 71–2 U.S.T.C. para. 9502 (8th Cir. May 21, 1971); *Raynor v. Commissioner,* 50 T.C. 762 (1968); *Borg v. Commissioner,* 50 T.C. 257 (1968); *Blum v. Commissioner,* 59 T.C. 436 (1972); *Thompson v. Commissioner,* 36 T.C.M. (CCH) 157 (1977); *Duke v. Commissioner,* 35 T.C.M. (CCH) 229 (1976); *Mirow v. Commissioner,* 34 T.C.M. (CCH) 628 (1975).

**6.** *Cf. Underwood v. Commissioner,* 535 F.2d 309, 312 (5th Cir.1976) (no increase in basis where taxpayers merely exchanged demand notes between themselves and their wholly owned corporations because it was doubtful that the taxpayers would ever be called upon for payment).

**7.** For example, a guarantor who has pledged stock to secure a loan has experienced an economic outlay to the extent that that pledged stock is not available as collateral for other

stead, we conclude that under the principles of *Plantation Patterns,* a shareholder who has guaranteed a loan to a Subchapter S corporation may increase her basis where the facts demonstrate that, in substance, the shareholder has borrowed funds and subsequently advanced them to her corporation.

The government correctly argues that generally taxpayers are liable for the tax consequences of the transaction they actually execute and may not reap the benefit of some other transaction that they might have made. In other words, taxpayers ordinarily are bound by the "form" of their transaction and may not argue that the "substance" of their transaction triggers different tax consequences. In *Commissioner v. National Alfalfa-dehydrating,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974) the Court observed:

> While a taxpayer is free to organize his affairs as he choses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, ... and may not enjoy the benefit of some other route he might have chosen to follow but did not.

*See also Don E. Williams Co. v. Commissioner,* 429 U.S. 569, 579, 97 S.Ct. 850, 856, 51 L.Ed.2d 48 (1977); *Brown,* 706 F.2d at 756.

It is equally well settled that the Commissioner need not always determine the tax effect of transactions based on the form of the transaction. *Higgins v. Smith,* 308 U.S. 473, 477, 60 S.Ct. 355, 357–58, 84 L.Ed. 406 (1940). This principle is particularly evident where characterization of capital as debt or equity will have different tax consequences. Thus in *Plantation Patterns* the court held that interest payments by a corporation on debentures were constructive stockholder dividends and could not be deducted by the corporation as interest payments. There, the former Fifth Circuit recharacterized debt as equity at the insistence of the Commissioner. These principles, however, are not solely for the government's benefit. I.R.C. section 385(b) sets forth five factors which are available to determine "whether a debtor-creditor relationship exists or a corporation-shareholder relationship exists."[8] Similarly this circuit applies a thirteen factor analysis to characterize a taxpayer's interest in a corporation. *In re Lane,* 742 F.2d 1311 (11th Cir.1984) (applying factors set out in *Estate of Mixon v. United States,* 464 F.2d 394, 402 (5th Cir.1972)).[9]

---

investments. The guarantor in this example has lost the time value or use of its collateral.

**8.** 26 U.S.C. § 385 provides in relevant part:

SEC. 385. TREATMENT OF CERTAIN INTERESTS IN CORPORATIONS AS STOCK OR INDEBTEDNESS

\* \* \* \* \* \*

(b) Factors.—The regulations prescribed under this section shall set forth factors which are to be taken into account in determining with respect to a particular factual situation whether a debtor-creditor relationship exists or a corporation-shareholder relationship exists. The factors so set forth in the regulations may include among other factors:

(1) whether there is a written unconditional promise to pay on demand or on a specified date a sum certain in money in return for an adequate consideration in money or money's worth, and to pay a fixed rate of interest,

(2) whether there is subordination to or preference over any indebtedness of the corporation,

(3) the ratio of debt to equity of the corporation,

(4) whether there is convertibility into the stock of the corporation, and

(5) the relationship between holdings of stock in the corporation and holdings of the interest in question.

**9.** The thirteen factors used to determine whether advances to a corporation are debt or equity are:

(1) the names given to the certificates evidencing the indebtedness;

(2) the presence or absence of a fixed maturity date;

(3) the source of payments;

(4) the right to enforce payment of principal and interest;

(5) participation in management flowing as a result;

(6) the status of the contribution in relation to regular corporate creditors;

(7) the intent of the parties;

(8) 'thin' or adequate capitalization;

(9) identity of interest between creditor and stockholder;

Although the question of whether a stockholder's advances to a corporation constitute debt or capital contributions is usually raised by the government, nothing in the Internal Revenue Code or our decisions suggests that the factors used to determine the substantive character of a taxpayer's interest in a corporation are available only to the government. *See In re Lane,* 742 F.2d at 1315; *cf. Peter E. Blum,* 59 T.C. 436, 439 (1972) (principles for resolving debt-equity determinations are consistent regardless of the context in which such determinations arise); *J.A. Maurer, Inc.,* 30 T.C. 1273 (1958). Accordingly, where the nature of a taxpayer's interest in a corporation is in issue, courts may look beyond the form of the interest and investigate the substance of the transaction. These situations present an exception to the general proposition that a shareholder/taxpayer is bound by the form of her transaction. *See Georgia-Pacific Corp. v. Commissioner,* 63 T.C. 790, 795–96 (1975).

At issue here, however, is not whether the taxpayer's contribution was either a loan to or an equity investment in Jane Simon, Inc. The issue is whether the taxpayer's guarantee of the corporate loan was in itself a contribution to the corporation sufficient to increase the taxpayer's basis in the corporation. In most cases, a mere guarantee of a corporate loan is insufficient, absent subrogation, to increase a taxpayer's basis. *See Brown; Borg v. Commissioner,* 50 T.C. 257 (1968); *Duke v. Commissioner,* 35 T.C.M. 229 (1976); *Mirow v. Commissioner,* 34 T.C.M. 628 (1975); Rev.Rul. 75–144 (increase basis where shareholder substitutes his promise to pay for corporation's promise). Thus arguments similar to Selfe's—that the taxpayer's guarantee is in reality a loan made to the shareholder/taxpayer that is subsequently advanced to the corporation—usually meet with little success because the taxpayer is unable to demonstrate that the substance of his transaction is different than its form. Indeed, the *Brown* court refused "to accept petitioners' contorted view of the transaction in furtherance of their 'substance over form' argument when as the court below observed, 'the substance matched the form.'" 706 F.2d at 756. Similarly, in *Blum v. Commissioner,* the court determined that although guaranteed loans might constitute contributions to capital, the taxpayer there was not entitled to an increased basis because the bank expected repayment of its loan from the corporation and not the taxpayer. *Blum,* 59 T.C. at 440. That taxpayers rarely, if ever, have demonstrated that a guarantee was in reality a loan to the corporation from the shareholder/taxpayer does not mean that this argument is legally inadequate *per se.* As noted in *In re Breit,* 460 F.Supp. 873, 875 (E.D.Va.1978), "[t]he issue is a mixed question of law and fact ... [and] [n]o single factor determines whether the loans were in fact by the bank to appellants followed by a capital contribution on their part."

Under the principles of *Plantation Patterns,* a shareholder guarantee of a loan may be treated for tax purposes as an equity investment in the corporation where the lender looks to the shareholder as the primary obligor. Essential to the *Plantation Patterns* court's analysis was that the notes guaranteed by the shareholder were issued by a thinly capitalized corporation and had more equity characteristics than debt. The *Plantation Patterns* court stressed that its inquiry focused on highly complex issues of fact and that similar inquiries must be carefully evaluated on their own facts. 462 F.2d at 719; *see also* private letter ruling 8139012 (June 19, 1981). Here, the taxpayer has presented the deposition testimony of her loan officer stating that the bank primarily looked to the taxpayer and not the corporation for repayment of the loan. Moreover, the tax-

---

(10) source of interest payments;
(11) the ability of the corporation to obtain loans from outside lending institutions;
(12) the extent to which the advance was used to acquire capital assets; and

(13) the failure of the debtor to repay on the due date or to seek a postponement.
*Lane,* 742 F.2d at 1314–15 (quoting *Mixon* ).

payer also has elicited testimony indicating that Jane Simon, Inc. was thinly capitalized. The taxpayer argues that it is highly unlikely that the bank would have advanced funds directly to Jane Simon, Inc. —a fledgling enterprise operated by a novice in a highly competitive field. This argument is further supported by the fact that the bank previously had approved a line of credit consistent with the credit enjoyed by Jane Simon, Inc. to Jane Selfe, nee Simon, based upon her pledge of Avondale stock. The government, however, notes that it was at the bank's insistence that the line of credit originally approved for the taxpayer was converted to loans to the corporation guaranteed by the taxpayer.

Accordingly, we conclude that there are material facts still in issue and therefore summary judgment was inappropriate. We remand for a determination of whether or not the bank primarily looked to Jane Selfe for repayment and for the court to apply the factors set out in *In re Lane* and I.R.C. section 385 to determine if the taxpayer's guarantee amounted to either an equity investment in or shareholder loan to Jane Simon, Inc. In short, we remand for the district court to apply *Plantation Patterns* and determine if the bank loan to Jane Simon, Inc. was in reality a loan to the taxpayer.

REVERSED and REMANDED.