LEWIS BADER AND MARCIA BADER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Bader v. Commissioner
Docket Nos. 14283-84, 14284-84, 14287-84, 14288-84.
United States Tax Court
T.C. Memo 1987-30; 1987 Tax Ct. Memo LEXIS 30; 52 T.C.M. (CCH) 1398; T.C.M. (RIA) 87030; January 14, 1987. James R. Brockway and Janeanne C. Lubin-Szafranski, for the petitioners. Richard G. Convicer, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes for the taxable year 1980: Docket No.
Deficiency
14283-84
$23,858.00
14284-84
31,314.00
14287-84
3,772.00
14288-84
16,882.00
The only issue for decision is whether certain funds received by East Avenue Radiology Associates, P.C. represent indebtedness of the corporation to its shareholders within the meaning of section 1374(c)(2)(B). [2]
*32 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of their petitions, petitioners resided in Connecticut. East Avenue Radiology Associates, P.C. (hereafter "EARA"), a Connecticut corporation, was incorporated on January 2, 1980. On March 3, 1980, EARA filed an election under section 1372 to be treated as a small business corporation. EARA filed its returns on a calendar year basis. As of December 31, 1980, the outstanding stock of EARA was held as follows: Petitioner
Percent
Murray Rosenberg
27.5%
Lewis Bader
27.5 Jesse Wexler
20.0 Martin Herbstman
25.0 Petitioners, in the aggregate, contributed $2,000 to EARA in exchange for their common stock. Petitioners, as of December 31, 1980, owned identical percentages of the stock of Radiology Associates of Westport, P.C. (hereafter "RAW"), also a Connecticut corporation. The shareholders of RAW formed EARA for the purpose of opening an office for the practice of radiology in Norwalk, Connecticut. A separate corporation was formed in order to isolate the *33 Norwalk business risks from the already successful RAW corporation. Between January 18, 1980 and January 31, 1980, Connecticut National Bank (hereafter "CNB") made loans to the shareholders of EARA as follows: Date
Shareholder
Amount
1/31/80
Murray Rosenberg
$21,750.00
1/18/80
Lewis Bader
21,750.00
1/21/80
Jesse Wexler
12,750.00
1/18/80
Martin Herbstman
18,750.00
$75,000.00
The shareholders executed notes to CNB for the above amounts, discounted at 16-1/4 percent per annum and due in 90 days. In February 1980, the shareholders of EARA agreed to loan EARA $105,000 and adopted a corporate resolution authorizing such borrowing from the shareholders. Pursuant to this resolution, each of the shareholders loaned the amount initially borrowed from CNB in January 1980, to EARA. The amounts loaned by each shareholder to EARA were in proportion to their corporate ownership percentages. The full $105,000 was not loaned to EARA in February because the full amount was not needed by the corporation until May 1980. The notes executed by the shareholders during January 1980 were renewed by CNB on May 1, 1980. An additional $30,000 was borrowed by the *34 shareholders from CNB on May 6, 1980. This amount was discounted at 20-1/2 percent per annum and was evidenced by notes due in 60 days. The amounts borrowed were then loaned to EARA by each shareholder. Prior to August 15, 1980, no payments were made by the petitioners on the notes payable to CNB. When the notes became due in July 1980, petitioners did not want to repay them from their personal assets and EARA had not earned sufficient revenues to provide funds for the repayment of the notes. CNB refused to renew the notes on an unsecured basis. On August 15, 1980, the total debt outstanding between petitioners and CNB was consolidated into one loan agreement with EARA. The new loan documentation listed EARA as the primary obligor and the shareholders as guarantors. CNB secured the loan by filing a lien on the assets of EARA and by having RAW also guarantee the loan. Thereafter, CNB directly mailed payment notices and notices of interest rate changes with respect to the loan to EARA. RAW, however, actually made the payments on the loan. On their returns for 1980, the shareholders included in their bases as a loan to EARA the amount outstanding on the loan between CNB and *35 EARA on December 31, 1980 as follows: Shareholder
Amount
Murray Rosenberg
$26,675.00
Lewis Bader
26,675.00
Jesse Wexler
19,400.00
Martin Herbstman
24,250.00
RAW provided working capital totalling $120,000 during 1980 to EARA, maintaining an open account for this purpose. The funds transferred to EARA pursuant to this account were carried on RAW's books as accounts receivable from EARA. On December 30, 1980, the shareholders executed a resolution reciting that RAW was loaning to the shareholders $120,000 on condition that they loan the $120,000 to EARA. On the same day, the shareholders executed a resolution reciting that they were loaning to EARA such amounts of working capital as necessary to meet the needs of EARA. No money was transferred to the shareholders by RAW or to EARA by the shareholders on or after December 30, 1980, pursuant to either of the resolutions. Neither the shareholders nor EARA executed a note payable pursuant to the December 30, 1980 resolutions. After the execution of the December 30, 1980 resolution, RAW continued to treat the $120,000 on its general ledger, as an obligation payable directly from EARA to RAW. EARA was merged *36 into RAW on January 4, 1982. Prior to the merger, EARA made no payment to the shareholders in satisfaction of the loan. Pursuant to the merger, the restructured debt between EARA and its shareholders was extinguished since the ledger accounts were offsetting shareholder loan receivables and shareholder loan payables. On their returns for 1980, the shareholders included in their bases as a loan to EARA the $120,000 in advances from RAW as follows: Shareholder
Amount
Murray Rosenberg
$33,900.00
Lewis Bader
33,900.00
Jesse Wexler
22,200.00
Martin Herbstman
30,000.00
For the taxable year 1980, EARA reported a net operating loss of $221,679. OPINION The issue for decision is whether the funds received by EARA as a result of the loans from CNB and the advances from RAW represent indebtedness of EARA to its shareholders within the meaning of section 1374(c)(2)(B). Section 1374(a), as in effect in 1980, allowed the net operating loss of an electing small business corporation as a deduction to its shareholders. Section 1374(b) provided that each shareholder's portion *37 of the net operating loss should be in proportion to his stock ownership during the taxable year. The shareholder's deduction for the net operating loss was limited to his basis in his stock (sec. 1374(c)(2)(A)) and his basis in any indebtedness of the corporation to such shareholder as of the close of the taxable year (sec. 1374(c)(2)(B)). Therefore, petitioners' ability to utilize EARA's net operating loss, in excess of their stock basis, is limited to the extent of any basis in debt of EARA which is indebtedness to its shareholders. Petitioners bear the burden of proving the existence of such debt. Rule 142(a). [3]
Respondent contends that the restructuring of the debt to CNB before the end of 1980 converted the debt to a debt of EARA to CNB. Further, respondent contends that the advances made by RAW to EARA in 1980 were a debt of EARA to RAW and did not create a debt running in favor of the shareholders of EARA. Conversely, petitioners contend that the restructuring of the loan from CNB did not alter their liability on the debt nor change the nature of EARA's obligation. *38 Petitioners also contend that the advances made by RAW were advances to its shareholders which were then loaned to EARA. Petitioners argue that the payment of these funds directly from RAW to EARA was merely a matter of convenience. Respondent has not disputed that the loans initially made by CNB were made solely to the shareholders of EARA. Therefore, at least until August of 1980, the funds provided EARA from the CNB loans did create debt of the corporation to its shareholders. For purposes of section 1374(c)(2)(B), however, the debt of EARA to its shareholders must have existed at the close of the taxable year. Whether this debt continued to be a debt of the corporation to its shareholders at the end of 1980 depends upon whether the restructuring of the debt in August of 1980 altered the nature of the debt with respect to EARA and its shareholders. Our cases have held repeatedly that the guarantee of a corporate debt by its shareholders is insufficient to create a debt of the corporation to its shareholders for purposes of section 1374(c)(2)(B). E.g., Raynor v. Commissioner,50 T.C. 762, 770-771 (1968); *39 Borg v. Commissioner,50 T.C. 257, 264 (1968); Perry v. Commissioner,47 T.C. 159, 163 (1966), affd. 392 F.2d 458 (8th Cir. 1968). Further, in Raynor v. Commissioner, we stated that, [T]he fact that shareholders may be primarily liable on indebtedness of a corporation to a third party does not mean that this indebtedness is "indebtedness of the corporation to the shareholder" within the meaning of section 1374(c)(2)(B). No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. Prior to that crucial act, "liability" may exist, but not debt to the shareholders. [Citations omitted; 50 T.C. at 770-771.] Based on the above, the focus of our inquiry is not whether petitioners were liable on the debt to CNB after the restructuring of the debt, but rather, our inquiry must focus on whether EARA continued to be liable to the shareholders after the restructuring of the debt. The documentation of the restructured loan, prepared by CNB, listed EARA *40 as the primary obligor on the debt and the shareholders as guarantors. Petitioners have presented no documentary evidence, prepared by either EARA or CNB, which would suggest that EARA was not a primary obligor on the debt. Further, even if petitioners were primary obligors on the debt along with EARA, EARA would not have any debt to the shareholders until and unless the shareholders paid some portion of the debt to CNB. Raynor v. Commissioner,supra at 770-771. The weight of the evidence in this case clearly demonstrates that EARA was a primary obligor on the debt to CNB after the restructuring of the debt and, in addition, that petitioners were guarantors of the debt. Nevertheless, petitioners argue that they were in substance the primary obligors on the debt to the exclusion of EARA. Petitioners argue that with regards to this issue we should consider the opinion of the Eleventh Circuit in Selfe v. United States,778 F.2d 769 (11th Cir. 1985). In its opinion in Selfe v. United States,supra, the Eleventh Circuit stated, We agree * * * that economic outlay is required before a stockholder in a Subchapter S corporation *41 may increase her basis. We disagree, however, with the proposition that a stockholder/taxpayer must, in all cases, absolve a corporation's debt before she may recognize an increased basis as a guarantor of a loan to a corporation. Instead, we conclude that under the principles of [Plantation Patterns, Inc. v. Commissioner,462 F.2d 712 (5th Cir. 1972)], a shareholder who has guaranteed a loan to a Subchapter S corporation may increase her basis where the facts demonstrate that, in substance, the shareholder has borrowed funds and subsequently advanced them to her corporation. [778 F.2d at 772-773; fns. omitted.] We have reservations with regard to the application of the reasoning in Selfe v. United States absent an argument being made that the debt in question should be considered a contribution to the capital of the corporation rather than debt of the corporation. See Selfe v. United States,supra at 774. The parties have not made this argument. Further, petitioners have not established that CNB looked primarily to them *42 for satisfaction of the debt. [4] See Selfe v. United States,supra at 771, citing Plantation Patterns, Inc. v. Commissioner,supra.
Accordingly, petitioners may not treat any portion of the debt created by loans from CNB as debt of EARA to its shareholders within the meaning of section 1374(c)(2)(B). With respect to the advances made by RAW to EARA, petitioners have clearly tried to rewrite both the form and the substance of the transaction. RAW made open account advances to EARA during 1980 which were carried on RAW's general ledger as an accounts receivable from EARA. *43 On December 30, 1980, petitioners attempted to recharacterize these advances by executing two resolutions. The first resolution stated that RAW was lending its shareholders $120,000, while the second stated that the shareholders were lending EARA such amounts as was necessary to meet the needs of EARA. At the time these resolutions were executed, the funds advanced to EARA had already been passed directly from RAW to EARA. Further, after the passage of these resolutions, RAW continued to treat this debt as an accounts receivable from EARA. There is no credible evidence in the record to suggest that any debt ever existed between EARA and its shareholders as a result of these advances. The advances were made without any schedule for payments. In addition, no payments were ever made on the alleged debt. Accordingly, petitioners may not treat any portion of the advances made by RAW to EARA as creating debt of EARA to its shareholders within the meaning of section 1374(c)(2)(B). Decisions will be entered for the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Murray A. Rosenberg and Sandra N. Rosenberg, docket No. 14284-84; Jesse Wexler and Susan Wexler, docket No. 14287-84; Martin S. Herbstman and Frances Herbstman, docket No. 14288-84.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedures.↩
4. Walter Wolfertz, a CNB loan officer, testified that he believed that were the loan to be in default, CNB would first proceed against EARA and then against the shareholders as guarantors of the loan. Wolfertz concluded this from the fact that EARA was named as the primary obligor on the loan and because CNB held a lien against all of the assets of EARA. No other evidence was offered to demonstrate which party the bank would first proceed against and the record does not establish whether CNB could reasonably have relied upon the assets of EARA to secure the loan.↩