S. JOEL SUISMAN and MARY JANE SUISMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Suisman v. Commissioner
Docket No. 26744-87
United States Tax Court
T.C. Memo 1989-629; 1989 Tax Ct. Memo LEXIS 629; 58 T.C.M. (CCH) 751; T.C.M. (RIA) 89629; November 27, 1989; As corrected December 21, 1989 *630 John T. Del Negro, for the petitioners. John J. Ferrante, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated May 11, 1987, respondent determined a deficiency in petitioners' Federal income tax for taxable year 1983 in the amount of $ 48,913, an addition to tax under section 6653(a)(1)[1] in the amount of $ 3,618, and an addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest due on $ 72,359. [2]
After concessions, the issues for decision are: (1) Whether a sole shareholder's guarantee of the debt of an electing small business corporation under subchapter S *631 increases his basis in his stock; (2) Whether petitioners are liable for the additions to tax under sections 6653(a)(1) and 6653(a)(2). FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioners resided in Old Lyme, Connecticut, when they filed their petition. During 1983, petitioner (all references to petitioner are to S. Joel Suisman) was the sole shareholder of Antigua Charter Groupe Ltd. (hereinafter referred to as Antigua), an electing small business corporation. Antigua was incorporated as a Delaware corporation on May 1, 1981. On May 18, 1981, Antigua's account at Connecticut National Bank (hereinafter referred to as CNB) was credited with $ 375,500, representing the proceeds of a loan from CNB to Antigua. The loan was guaranteed by petitioner in his individual capacity. On May 19, 1981, Antigua purchased a 50-foot sailing vessel known as the "Diligence" for $ 370,000. The Diligence was held for charter in the ordinary course of business from the date of purchase until its sale on September 28, 1983. On October 30, 1981, CNB advanced *632 an additional $ 25,000 dollars to Antigua. The loan was not evidenced by a note. During 1981 and 1982, petitioner contributed funds to Antigua in order to make payments for principal, interest, and miscellaneous expenses. Antigua claimed operating losses of $ 117,693 for 1981 and $ 131,258 for 1982. Petitioners claimed deductions in the amount of the losses on their Federal income tax returns for 1981 and 1982. Respondent reduced petitioners' reported 1982 loss by $ 27,751 after determining that petitioner had insufficient basis in Antigua. Petitioners consented to this adjustment. On September 28, 1983, the Diligence was sold for $ 295,000. The net proceeds from the sale were $ 265,500. On that day, Antigua executed a note (hereinafter referred to as the September 1983 note) in favor of CNB in the principal amount of $ 162,000, representing the unpaid balance owed by Antigua after application of the sales proceeds to outstanding loans. The note was guaranteed by petitioner in his individual capacity. When the 1983 note was executed, Antigua's cash account was approximately $ 11,000. William E. Fritz, the CNB officer responsible for handling the accounts of petitioner *633 and Antigua, was aware of Antigua's financial condition when he approved the September 1983 note. In deciding to make the loan to Antigua, Fritz considered, among other factors, petitioner's financial resources. Petitioner was not free to dispose of any funds loaned to Antigua by CNB. The only activity Antigua has conducted after September of 1983 is the payment of interest and miscellaneous expenses, for which petitioner advanced funds to the corporation. Antigua claimed an ordinary loss of $ 60,135 and a section 1231 loss of $ 67,907 for 1983. Petitioners claimed a deduction from gross income in the amount of the loss on their 1983 Federal income tax return. Respondent disallowed the deduction because petitioner had insufficient basis in the Antigua stock. OPINION Section 1366(a), formerly section 1374, permits a shareholder in a subchapter S corporation to deduct his portion of the corporation's net operating loss from his gross income. Section 1366(d) limits the amount of the deduction to the sum of (1) the adjusted basis of the shareholder's stock in the corporation and (2) the adjusted basis of any indebtedness of the corporation to the shareholder. *634 A shareholder's guarantee of the indebtedness of a corporation to a third party does not mean that this constitutes "indebtedness of the corporation to the shareholder" within the meaning of section 1366(d)(1)(A). The guarantee of corporate indebtedness by a shareholder does not give rise to indebtedness from the corporation to the shareholders until and unless the shareholder pays part or all of the obligation. Estate of Leavitt v. Commissioner, 90 T.C. 206 (1988), affd. 875 F.2d 420 (4th Cir. 1989), cert. denied -U.S.- (Nov. 6, 1989); Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968). Petitioner's basis in the Antigua stock was exhausted by losses claimed on petitioner's 1981 and 1982 returns. Unless his guarantee of the September 1983 note increases his basis, he is not entitled to a deduction for the loss claimed on the 1983 return. In arguing that his basis in the Antigua stock should be increased by the amount of the debt he guaranteed, petitioner relies on Selfe v. United States, 778 F.2d 769 (11th Cir. 1985), an opinion which suggested the use of debt-equity principles to determine whether shareholder-guaranteed *635 corporate debt is in substance a capital contribution to an S corporation. However, in Estate of Leavitt v. Commissioner, supra , this Court rejected the reasoning of Selfe. In Estate of Leavitt, shareholders in VAFLA Corp., an electing small business corporation under subchapter S, guaranteed a loan issued by the Bank of Virginia to the corporation. When the loan was processed the Bank of Virginia was provided with a corporate income statement for VAFLA's first three months of operation showing a substantial loss. Moreover, VAFLA was having trouble meeting its cash flow requirements, and the company's liabilities exceeded its assets. The Bank of Virginia issued the loan only because of the financial strength of the corporation's guaranteeing shareholders. In spite of VAFLA's precarious financial position, the company made all payments of principal and interest on the loan. Neither VAFLA nor its guaranteeing shareholders reported any of the company's payments of the loan's principal or interest as dividends. Presented with these facts in Estate of Leavitt, we held that, absent an economic outlay by the company's guaranteeing shareholders, the *636 shareholders' guarantees of the loan did not increase their basis in their VAFLA stock. Estate of Leavitt v. Commissioner, supra at 207, 212. As was the case in Estate of Leavitt, the facts of the instant case do not support a finding that the loan from CNB to Antigua was in substance a loan to petitioner followed by a capital contribution to Antigua. All of the repayments of principal and interest were made by Antigua, and petitioner never treated these payments as constructive dividends. As of the date of trial, petitioner had yet to be called upon to make any payments on his personal guarantee. Petitioner also argues that Gilday v. Commissioner, T.C. Memo. 1982-242, supports his position. In Gilday the shareholders of an S corporation gave their personal notes to a bank in cancellation of the corporation's note. The substitution of the shareholders' notes for that of the corporation increased their basis in the stock. The instant case is distinguishable from Gilday because there has been no such substitution. Finally, petitioner urges us to hold that upon liquidation of an S corporation a sole shareholder is deemed to have *637 made a capital contribution to the corporation in the amount of any unsatisfied indebtedness of the corporation that the shareholder has personally guaranteed. Such a rule would be inconsistent with Estate of Leavitt, and we decline to so hold. Under such circumstances the shareholder's basis in his stock will be increased as he makes payments on his guarantee. In conclusion, we find that the instant case is controlled by Estate of Leavitt, and that petitioner's basis in his Antigua stock is not increased by his guarantee of the September 1983 note. We therefore uphold respondent's disallowance of petitioners' claimed loss. Additions to Tax
We now address the final issue of whether petitioners are subject to additions to tax under sections 6653(a)(1) and 6653(a)(2). Section 6653(a)(1) provides for an addition to tax of 5 percent of any underpayment if any part of the underpayment is due to negligence or the intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional *638 disregard of rules or regulations. Negligence under section 6653(a) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioners bear the burden of proof with respect to additions to tax for negligence. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860 (1982). Petitioners presented no testimony or documentary evidence regarding the additions to tax under sections 6653(a)(1) and 6653(a)(2). Accordingly, petitioners have failed to carry their burden of proof. Respondent's determination of additions to tax is upheld. In light of the foregoing, Decision will be entered under rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Prior to the issuance of the notice of deficiency petitioners agreed to an increase in their Federal income tax liability for 1983 in the amount of $ 23,446. Thus, the understatement of tax for purposes of computing the section 6653(a)(1) and 6653(a)(2)↩ additions to tax is $ 72,359, rather than $ 48,913.