T.C. Summary Opinion 2017-9

UNITED STATES TAX COURT

WILLIAM H. TINSLEY AND AMARYLLIS E. TINSLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6698-14S.                    Filed February 28, 2017.

William H. Tinsley & Amaryllis E. Tinsley, pro sese.

<u>Horace Crump</u>, <u>Thomas Alan Friday</u>, and <u>Edwin B. Cleverdon</u>, for
respondent.

SUMMARY OPINION

JACOBS, <u>Judge</u>:  This case was heard pursuant to the provisions of section
7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant
to section 7463(b), the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other case.

This case was submitted to the Court fully stipulated under Rule 122. The sole issue in this case is whether Mr. Tinsley had a sufficient basis in Command Computers of West Florida, Inc. (Command Computers), as of December 31, 2010, on account of his obligation with respect to the Command Computers' debt, to permit petitioners to deduct $110,480, which represented a portion of Mr. Tinsley's distributive share of Command Computers' current and suspended (2008) flowthrough losses, on their 2010 Form 1040, U.S. Individual Income Tax Return. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

At the time they filed their petition, petitioners resided in Florida. At all relevant times Mr. Tinsley was the sole shareholder of Command Computers, a corporation engaged in the business of computer design and service. Command Computers elected S corporation status effective March 22, 2006.

On April 5, 2006, Command Computers borrowed $150,000 from First City Bank of Florida (Bank). Mr. Tinsley guaranteed the loan. Command Computers was liquidated in August 2010. At the time of liquidation Command Computers owed the Bank $110,480.

Command Computers timely filed its 2010 Form 1120S, U.S. Income Tax Return for an S Corporation, on which it reported an ordinary business loss of $136,243. Mr. Tinsley had no stock or debt basis in Command Computers when it was liquidated.

After Command Computers was liquidated, the operations of the business continued under its former name. The legal form of the business was not indicated in the record.

Command Computers' 2006 loan with the Bank was renewed on March 16, 2011. Command Computers of West Florida, Inc., remained the named borrower of the renewed loan even though it no longer legally existed. Mr. Tinsley signed the renewal note as president of Command Computers and was the guarantor of the loan. The amount of the renewed loan was $104,771.86. Attached to the renewal note was the original promissory note, dated April 5, 2006, on which a handwritten notation stated: "Sec by--Inventory & Equipment". The renewal note provided that a final balloon payment was due on March 16, 2016. Mr. Tinsley made all loan payments following the liquidation of Command Computers, but the record does not indicate whether he made the payments from his personal funds or merely signed checks drawn on the account of Command Computers.

- 4 -

Respondent examined petitioners' 2010 tax return and disallowed the $110,480 loss deduction related to Command Computers. On January 3, 2014, respondent mailed petitioners a notice of deficiency. On Form 886-A, Explanation of Items, attached to the notice of deficiency, respondent explained:

> Since your distributive share of the S Corporation Command Computers of West Florida, Inc. loss is limited to the extent of your adjusted basis, we have disallowed the amount in excess of your basis, your loss flow-through from your S Corporation is limited to your basis. Since you did not establish that the amount shown was (a) a loss, and (b) sustained by you, it is not deductible. The loss(es) you claimed cannot be allowed because it has not been established that you are at risk within the meaning of section 465 of the Internal Revenue Code in the amount of the claimed loss(es).

Discussion

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace and are allowable only as specifically provided by statute. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers bear the burden of proving that they are entitled to any deductions claimed. New Colonial Ice Co. v. Helvering, 292 U.S. at 440.

Section 1366(a)(1)(A) provides that an S corporation shareholder may take into account his or her pro rata share of the corporation's losses, deductions, or credits. However, section 1366(d)(1) limits the aggregate amount of losses and deductions the shareholder may take into account to the sum of (A) the adjusted basis of the shareholder's stock in the S corporation (arising from capital contributions to the S corporation, see Nathel v. Commissioner, 131 T.C. 262 (2008), aff'd, 615 F.3d 83 (2d Cir. 2010)), and (B) the shareholder's adjusted basis in any indebtedness of the S corporation (often acquired by borrowing funds from a third party and contributing the proceeds to the corporation, see Gleason v. Commissioner, T.C. Memo. 2006-191).

Mr. Tinsley concedes he had no stock or debt basis in Command Computers at the time of its liquidation in 2010. However, he contends that upon the liquidation, he assumed the balance due on the note as guarantor, and because he was the sole remaining obligor, this assumption was a contribution to capital, allowing him to deduct the amount of Command Computers' losses. Further, Mr. Tinsley asserts that following Command Computers' liquidation, the Bank expected him, as guarantor, to repay the loan and that the Bank's expectation was sufficient to generate a basis for Mr. Tinsley in Command Computers.

Merely guaranteeing an S corporation's debt is not sufficient to generate a basis under section 1366(d)(1)(B). Spencer v. Commissioner, 110 T.C. 62, 83 (1998); Estate of Leavitt v. Commissioner, 90 T.C. 206, 211 (1988), aff'd, 875 F.2d 420, 422 (4th Cir. 1989). In Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968), we stated: "No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. Prior to that crucial act, 'liability' may exist, but not debt to the shareholders." Id. We also have said that a shareholder may obtain an increase in basis in an S corporation only if there is an economic outlay on the part of the shareholder that leaves him or her "poorer in a material sense." Gleason v. Commissioner, T.C. Memo. 2006-191, slip op. at 24 (quoting Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), aff'd without published opinion, 1971 WL 2651 (8th Cir. May 12, 1971)). "Stated otherwise, the shareholder must make an actual 'investment' in the entity". Id.

We are mindful that the Court of Appeals for the Eleventh Circuit, to which an appeal in this case would normally lie were this not a small tax case,[1] has held

_____

[1]Because any appeal in this case, if it were permissible, would lie to the Court of Appeals for the Eleventh Circuit, we follow the precedent established in

(continued...)

that a shareholder who has guaranteed a loan to an S corporation may increase his or her basis where, in substance, the shareholder has borrowed funds and subsequently advanced them to the corporation. Selfe v. United States, 778 F.2d 769, 773 (11th Cir. 1985). The Court of Appeals noted the general rule that an economic outlay is required before a stockholder in an S corporation may increase his or her basis, id. at 772, but held that this rule does not require "a stockholder/taxpayer * * * [to] in all cases, absolve a corporation's debt before she may recognize an increased basis as a guarantor of a loan to a corporation", id. Observing that "where the nature of a taxpayer's interest in a corporation is in issue, courts may look beyond the form of the interest and investigate the substance of the transaction", id. at 774, and citing Plantation Patterns, Inc. v. Commissioner, 462 F.2d 712 (5th Cir. 1972), aff'g T.C. Memo. 1970-182,[2] the Court of Appeals held that a shareholder's guaranty of a loan to an S corporation

---

[1](...continued)
that circuit. See Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

[2]The U.S. Court of Appeals for the Eleventh Circuit was established on October 1, 1981, pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, Pub. L. No. 96-452, 94 Stat. 1994. In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), that court adopted the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down before the close of business on Sept. 30, 1981, as governing law in the Eleventh Circuit.

"may be treated for tax purposes as an equity investment in the corporation where the lender looks to the shareholder as the primary obligor." Selfe, 778 F.2d at 774. The Court of Appeals held that this determination is an "inquiry focused on highly complex issues of fact and that similar inquiries must be carefully evaluated on their own facts." Id.[3] In Selfe, the taxpayer presented the deposition testimony of her loan officer stating that the bank looked primarily to the taxpayer and not the corporation for repayment of the loan as well as evidence that the S corporation was thinly capitalized.

We now turn to the facts in this case to determine whether petitioners have established that by the end of 2010 (1) the Bank looked to Mr. Tinsley for repayment and (2) Mr. Tinsley made economic outlays in making those payments.

Petitioners presented no evidence to support a finding that the Bank looked primarily to Mr. Tinsley, as opposed to Command Computers, for repayment of the loan.[4] And we are mindful that petitioners concede that even after the

---

[3]Selfe v. United States, 778 F.2d 769 (11th Cir. 1985), was before the Court of Appeals on the taxpayer's appeal of an order granting the Government's motion for summary judgment. The evidence introduced by the taxpayer raised the issue of a material fact as to whether the shareholder was the primary obligor with respect to the debt.

[4]In petitioners' pretrial memorandum they state that "in the examiner's report, she [the examiner] received 'a statement from First City Bank, the debt

(continued...)

corporate liquidation, Command Computers remained an ongoing business enterprise.

We acknowledge that the stipulation of facts in this case states that "[t]he petitioner continues to make payments on the loan", but there is no indication that the loan payments were made from Mr. Tinsley's personal funds rather than Command Computers' funds with Mr. Tinsley signing payment checks as president. Moreover, we are mindful that under the terms of the renewal note, the renewed loan was to Command Computers and that Mr. Tinsley's obligation was that of a guarantor, not the maker of the loan. Further, we are mindful that the promissory note for the 2006 loan, which was appended to the 2011 renewal note, included a notation that the loan was secured by Command Computers' inventory

---

[4](...continued)
holder,' noting that Petitioner was the original guarantor on the loan.'" Petitioners also assert that the examination report states that the examiner received a letter from the Bank which stated: "Since the company folded in 2010, Mr. Tinsley [Petitioner] has assumed the full responsibility for this loan and makes all payments." Petitioners' pretrial memorandum also states: "First City Bank issued a letter to the IRS appeals officer stating that * * * [the fact that the loan renewal was made to the defunct Command Computers and not to Mr. Tinsley] was their standard operating procedure" in cases "where the original obligor is no longer active and we are now dealing with the person who was the original guarantor as the only remaining primary debtor."

Despite their importance, none of these documents was entered into the record. We therefore do not consider them in deciding this case.

and agreement.  Thus, we believe that (1) even after its liquidation Command Computers continued to operate, and (2) the Bank continued to look to Command Computers as the primary obligor on the loan and expected it to make the loan repayments.

Petitioners assert in their brief that the renewal of the loan to Command Computers in 2011 does not affect their position that Mr. Tinsley became the primary obligor of the loan upon Command Computers' liquidation.  "The bank, as a matter of administrative convenience, chose to renew the note instead of issuing a new note.  The name on the note was that of the former S corporation, an entity that no longer existed under state law.  The Bank was aware of this and had elected at the time of liquidation to leave the note in the corporate name."  Thus, petitioners posit that Mr. Tinsley assumed the bank debt at the time of Command Computers' liquidation and that "his status as the sole remaining obligor", for tax purposes, caused the repayments of the loan to be treated as contributions to the capital of Command Computers.  Respondent disagrees, arguing that "upon the Corporation's liquidation, the debt remained undisturbed:  the corporation did not default on the debt, the terms of the debt were not altered, and payments on the debt continued."

There is insufficient evidence in the record to permit us to make, with confidence, a finding that in both 2006 and 2011 the loan was made to Mr. Tinsley personally, as opposed to Command Computers, and that Mr. Tinsley, as the borrower, advanced the loan proceeds to Command Computers. Because petitioners failed to establish that the Bank looked primarily to Mr. Tinsley to satisfy the debt obligation or that Mr. Tinsley made an economic outlay with respect to the loan, they failed to prove they had a basis in Command Computers as of December 31, 2010, sufficient for them to deduct the reported business losses.

To reflect the foregoing,

Decision will be entered

for respondent.