# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1694

_____

Bobby R. Hargis; Brenda J. Hargis

*Petitioner*s

v.

John Koskinen, Commissioner of Internal Revenue

*Respondent*

_____

Appeal from The United States Tax Court

_____

Submitted: April 11, 2018
Filed: June 22, 2018

_____

Before BENTON, MELLOY, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

Bobby R. and Brenda J. Hargis petitioned the Tax Court[1] for redetermination of a tax deficiency. The Tax Court upheld the determination of the Commissioner of

_____

[1]The Honorable Mary Ann Cohen, United States Tax Court Judge.

Internal Revenue.  The Hargises appeal.  Having jurisdiction under section 7482(a)(1),[2] this court affirms.

## I.

From 2007 to 2010, the Hargises bought and operated nursing homes.  Bobby was the sole owner of corporations that operated the homes (the Operating Corporations).  They were S corporations under section 1362(a).  Brenda owned interests in companies that bought and leased the homes to the Operating Corporations (the Nursing Home LLCs).  The Nursing Home LLCs were partnerships under 26 C.F.R. § 301.7701-3(a).  All the entities had net operating losses, which the Hargises deducted on their joint tax returns for the years 2009 and 2010.

The Commissioner issued the Hargises a notice of deficiency for 2009 and 2010.  The Commissioner disallowed deduction of most of the nursing home losses, due to the Hargises' insufficient basis in their companies.  As a result, the Hargises owed $281,766 more for 2009 and 2010, combined.

The Hargises claim that each had greater basis in their companies.  The Tax Court ruled for the Commissioner.  This court reviews "the tax court's fact findings for clear error and its legal conclusions de novo." *Bean v. Commissioner*, 268 F.3d 553, 556 (8th Cir. 2001).

## II.

Bobby's Operating Corporations—as S corporations—are "passthrough" for tax purposes, meaning their income and losses generally pass through to the shareholders.  *See* **§ 1366**.  "[H]owever, S corporation losses may only be deducted

---

[2]All statutory citations are to 26 U.S.C., unless otherwise indicated.

to the extent a shareholder has basis in the corporation." ***Bergman v. United States***, 174 F.3d 928, 931 (8th Cir. 1999), *citing* **§ 1366(d)**. "This limitation prevents a shareholder from deducting more than he has invested in the corporation." ***Id.*** "The aggregate amount of losses and deductions taken into account by a shareholder . . . shall not exceed the sum of":

> (A) the adjusted basis of the shareholder's stock in the S corporation . . . and
> (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder . . . .

**§ 1366(d)(1)**.

Whether the Commissioner properly disallowed the Operating Corporations' losses depends on whether Bobby had enough basis in the Operating Corporations' debt under section 1366(d)(1)(B). The Operating Corporations, with no real assets or working capital, borrowed to finance operations when revenues were insufficient. They borrowed from commercial lenders, the Nursing Home LLCs, and each other. All the money was paid directly to the Operating Corporations to operate the homes. Bobby signed the loans as co-borrower or guarantor.

Bobby admits that, on their face, none of the loans shows indebtedness of the Operating Corporations to him. The lender of each loan is a third party—not Bobby. Bobby invokes the economic outlay doctrine. It says that "a stockholder must make an *actual economic outlay* to increase his basis in an S corporation." ***Bergman***, 174 F.3d at 932 (emphasis added). An actual economic outlay is "some transaction which when fully consummated left the taxpayer poorer in a material sense." ***Id.*** This court applies the economic outlay doctrine to determine whether a shareholder's loan to an S corporation is, in substance, an "investment" creating basis—that is, creating "genuine indebtedness." *See* ***Oren v. Commissioner***, 357 F.3d 854, 857 (8th Cir. 2004).

Citing this doctrine, Bobby asserts that the loans here, although from third parties in form, were, in substance, from him. "The economic outlay doctrine is one way of showing that a loan involving a third party is actually a loan from the shareholder to the corporation." ***Bean***, 268 F.3d at 558. *But see **id.*** at 557 ("Once chosen, the taxpayers are bound by the consequences of the transaction as structured, even if hindsight reveals a more favorable tax treatment."). He believes he made an actual economic outlay in connection with the loans, which shows they created genuine indebtedness to him by the Operating Corporations.

First, as for the loans from the Nursing Home LLCs, Bobby thinks he made an actual economic outlay because those loans reduced Brenda's capital account balance. But this indirect lending—even from a closely related entity—does not create basis. ***Bean***, 268 F.3d at 557 ("[T]he indebtedness of the S corporation must run directly to the shareholders: an indebtedness to an entity with passthrough characteristics which advanced the funds and is closely related to the taxpayer does not satisfy the statutory requirements [of § 1366(d)]." (quoting *Hitchins v. Commissioner*, 103 T.C. 711, 715 (1994)); ***Bergman***, 174 F.3d at 932 ("No basis is created for a shareholder . . . when funds are advanced to an S corporation by a separate entity, even one closely related to the shareholder.").

Second, Bobby thinks he made an actual economic outlay by signing loans as co-borrower. But this court has rejected this argument for guarantees and pledges of collateral. A shareholder's "guaranty of a corporate loan" or "pledge of personally owned property, without more, is not an economic outlay and is insufficient to create basis in the S corporation." ***Bean***, 268 F.3d at 558-59. Basis is created only when the shareholder "is actually called upon to make good on the guaranty" or "the mortgage is called to satisfy the corporation's debt." ***Id.*** at 559. "At that point, the corporation is indebted to the shareholder because the shareholder has actually paid the corporation's debt." ***Id.***

This reasoning controls here: As co-borrower, Bobby could have been forced to pay the Operating Corporations' debt. If he paid, he would make an actual economic outlay and the Operating Corporations would have be genuinely indebted to him. But that did not happen, and it gives him no basis. *See Maloof v. Commissioner*, 456 F.3d 645, 647-49 (6th Cir. 2006) (shareholder did not increase basis in S corporation's debt by becoming co-obligor); *Underwood v. Commissioner*, 535 F.2d 309, 312 (5th Cir. 1976) ("No form of indirect borrowing, be it guaranty, surety, accommodation, co-making, or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation." (quoting *Raynor v. Commissioner*, 50 T.C. 762, 770-71 (1968)).[3]

Bobby emphasizes that because he was co-borrower, not a guarantor, the lenders could force him to pay without first seeking payment from the Operating Corporations. This, he argues, means he was "directly liable." He cites this court's language that "guarantees . . . do not increase the shareholder's basis . . . because the shareholder is only secondarily and contingently liable. Only where the shareholder provides his own money (or *money he is directly liable for*) to the S corporation, will basis increase." *Oren*, 357 F.3d at 858 (emphasis added).

But this reference to "money he is directly liable for" means that a shareholder who "borrows money in an arm's length transaction and then loans the funds to the S corporation, is entitled to an increase in basis." *Id.* This is not the situation here. Bobby, like a guarantor, "may never be called upon to pay the corporate debt." *Underwood*, 535 F.2d at 312. Signing as co-borrower may increase the chances of

---

[3]In 2014, the Treasury amended its regulations: "A shareholder does not obtain basis of indebtedness in the S corporation merely by guaranteeing a loan or acting as a surety, accommodation party, or in any similar capacity relating to a loan." **§ 1.1366-2(a)(2)(ii)**. But this amendment was not effective until 2014 and is thus not applicable.

being forced to pay. But this does not change the fact that "unless that eventuality transpires, he will not have increased the basis of his investment in the corporation." *Id.* *See Maloof*, 456 F.3d at 469 ("That [the shareholder] cosigned the loan and that he could one day be asked to pay it does not by itself alter this conclusion because until that contingency transpired the S corporations remained indebted to the bank, not to [the shareholder].").

Finally, Bobby thinks he made an actual economic outlay, because the lenders looked primarily to him for payment. He relies on an Eleventh Circuit case. That circuit acknowledges the general rule that a shareholder that guarantees an S corporation's debt "must . . . absolve [the] corporation's debt before she may recognize an increased basis . . . ." *Selfe v. United States*, 778 F.2d 769, 772 (11th Cir. 1985). However, the Eleventh Circuit recognizes an exception that "a shareholder who has guaranteed a loan to a Subchapter S corporation may increase her basis where the facts demonstrate that, in substance, the shareholder has borrowed funds and subsequently advanced them to her corporation." *Id.* at 773. Finding summary judgment not appropriate on the issue, the court remanded "for a determination of whether or not the bank primarily looked to [the shareholder] for repayment . . . ." *Id.* at 775.

But here, the Tax Court found "no convincing evidence that any of the lenders looked to [Bobby] as the primary obligor on the loans." *Cf. Selfe*, 778 F.2d at 774 (emphasizing the "testimony of [the shareholder's] loan officer stating that the bank primarily looked to the taxpayer and not the corporation for repayment of the loan"). Bobby stresses that when he sold the Operating Corporations in 2014 to a member of the Nursing Home LLCs, he received a price that was discounted due to the Operating Corporations' debt. But this shows only that debt makes a company less valuable, not that Bobby personally paid any of the debt. Bobby testified that he never personally paid any of the debt.

-6-

None of the other facts demonstrates that, in substance, Bobby borrowed the funds and subsequently advanced them to the Operating Corporations. The lenders advanced the funds directly to the Operating Corporations; they directly paid the lenders; and Bobby did not pledge any personal assets as collateral. *See **Sleiman v. Commissioner***, 187 F.3d 1352, 1358 (11th Cir. 1999) ("[The lender] originally made the loans to [the S corporation], not to the [shareholders], and [the shareholders] never pledged any of their personal assets to secure the loans. These facts distinguish the case before us from *Selfe* . . . ."). True, the Operating Corporations were thinly capitalized, but "the mere presence of a risk did not require the tax court to find that [the lenders] could not have expected repayment from the [Operating Companies]." ***Id.***

The Tax Court did not clearly err in its findings, and correctly denied Bobby any basis in the indebtedness of the Operating Corporations. *See **WFC Holdings Corp. v. United States***, 728 F.3d 736, 742 (8th Cir. 2013) ("The general characterization of a transaction for tax purposes is a question of law subject to review. The particular facts from which the characterization is to be made are not so subject." (quoting *Frank Lyon Co. v. United States*, 435 U.S. 561, 581 n.16 (1978)).

III.

Brenda's Nursing Home LLCs—as partnerships—are also passthrough. *See* **§§ 701-02**. Her deduction of their losses is limited to "the adjusted basis of [her] interest in the partnership . . . ." **§ 704(d)(1)**. Generally, a partner's adjusted basis is the amount contributed (or paid to purchase the partnership interest), *plus* the partner's share of partnership income, *minus* distributions to the partner, and *minus* the partner's share of losses and other expenditures. *See* **§ 705**. Increases (or decreases) in "a partner's share of the liabilities of a partnership" are treated as contributions (or distributions) of money. **§ 752(a)-(b)**.

-7-

The Commissioner calculated Brenda's basis from the Nursing Home LLCs' tax returns (Schedule K-1). Brenda believes her basis is greater than that. The Tax Court ruled she did not present enough evidence to shift the burden of proof to the Commissioner. *See **Blodgett v. Commissioner***, 394 F.3d 1030, 1035 (8th Cir. 2005) (burden of proof "may shift to the I.R.S. . . . if the taxpayer introduces 'credible evidence'"—"evidence, which after critical analysis, the court would find sufficient upon which to base a decision on the issue *if no contrary evidence were submitted* (without regard to the judicial presumption of IRS correctness)." (emphasis in original) (citing § 7491)). Brenda disagrees. "The question of whether a taxpayer produced evidence sufficient to shift the burden of proof . . . is a legal one which we review de novo." ***Id.***

Brenda did not present sufficient evidence of her basis in 2009 and 2010 or provide any precise calculation. She did present agreements showing bank loans to the Nursing Home LLCs in 2005 and 2009 and claims an increased basis due to her share of those liabilities. (The K-1s, however, showed that Brenda's share of partnership liabilities was zero.) As evidence of her share of liabilities, another member of the Nursing Home LLCs testified that liabilities were allocated to members "proportionally upon a percentage of ownership in the LLC."

But a partner's share of liabilities depends on several "factually intensive determinations." *See **Powers v. Commissioner***, 105 T.C.M (CCH) 1798, 2013 WL 2338502, at *30 (2013). Primarily, whether the debt is "recourse" or "non-recourse." *See* **26 C.F.R. § 1.752-1-3**. A partner's share of liabilities includes recourse debt if the partner bears the "economic risk of loss" and an allocation of non-recourse debt. *See* **§ 1.752-1-3**. Brenda provided no evidence whether the debt was recourse or non-recourse, the economic risk of loss, or the allocation of non-recourse debt. The generalized testimony of the other member—who conceded he was not "involved in the preparation of the tax returns at all"—is not sufficient to calculate Brenda's share of the bank loans.

Even if Brenda provided some evidence of her share of the bank loans, that shows only a one-time increase in her basis. This is just one factor in determining her adjusted basis for the later years. This one-time increase could have been offset by a number of other events. Ultimately, "[t]here is a wholly unsufficient evidentiary basis for any reasonable computation or estimate of [Brenda's] adjusted basis in [her interests in the Nursing Home LLCs]." **Oates v. Commissioner**, 316 F.2d 56, 59 (8th Cir. 1963). "[T]he Tax Court was not required to estimate" her adjusted basis on the evidence presented. *See* **Parrish v. Commissioner**, 168 F.3d 1098, 1102 (8th Cir. 1999), *citing* **Oates**, 316 F.2d at 58-59.

The Tax Court properly refused to shift the burden of proof to the Commissioner and properly upheld the Commissioner's determination.

*******

The judgment is affirmed.

_____